Larry Michael SLAGLE,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

Nos. 77–2820, 78–1113.

United States Court of Appeals,
Ninth Circuit.

Jan. 30, 1980.

Harold J. Truett, III, Hoberg, Finger, Brown, Carlson, Cox & Molligan, San Francisco, Cal., on brief; Richard C. Raines, Hoberg, Finger, Brown, Carlson, Cox & Molligan, San Francisco, Cal., for plaintiff-appellant.

Stephen A. Shefler, Asst. U.S. Atty., San Francisco, Cal., on brief; Charles M. O'Connor, Asst. U.S. Atty., San Francisco, Cal., for defendant-appellee.

Before BROWNING, CHOY, and KENNEDY, Circuit Judges.

**1158**

KENNEDY, Circuit Judge:

The case raises questions concerning the Government's tort liability for the acts of a drug informant. Plaintiff Larry Michael Slagle brought this action against the United States under the Federal Tort Claims Act (FTCA or Act), 28 U.S.C. §§ 1346(b), 2671 et seq.[1] Slagle was paralyzed when he was shot in a gun battle. He sued the United States, on the theory that his injuries were caused by the negligence of the Government in the selection and supervision of a drug informant involved in the shooting incident, and by the informant's negligence at the site of the incident. The United States filed both a motion to dismiss for lack of jurisdiction and a motion for partial summary judgment. The district court denied the motion to dismiss, but granted partial summary judgment in favor of the Government.[2] Slagle appeals from this order. We affirm.

We state the relevant facts in the manner most favorable to plaintiff, as we are required to do on this appeal. Plaintiff and one Chester Wheeler had undertaken a nonprofit community service project in Richmond, California, with the goal of reducing drug abuse in that area. Upon the recommendation of a local police officer, Wheeler had contacted the Bureau of Narcotics and Dangerous Drugs (BNDD), now known as the Drug Enforcement Administration, and volunteered to make himself available as an informant. Wheeler met with agent Robert Bender of the BNDD. During the meeting, Bender informed Wheeler that BNDD informants must comply with the following general guidelines:

A. If an informant was arrested for possession of drugs and had not received advance approval from BNDD, BNDD would not intervene on his/her behalf.

B. An informant should not carry a gun while actively seeking out information. If an informant was arrested for assault with a deadly weapon, BNDD would not intervene on his/her behalf.

C. An informant was not to contact any "source" without first notifying the agent with whom he worked [in this case Bender]. This was established to permit early BNDD involvement in this investigation and to avoid the defense of entrapment.

D. In order to serve as an informant, [Wheeler] should refrain from violating the law and the use of drugs or narcotics.

In return for his services, the BNDD agreed to pay money to Wheeler on a per job basis.[3] Apart from the general guidelines, Wheeler had very broad discretion over the details of his informant activities.

1. Title 28 U.S.C. § 1346(b) reads in pertinent part:

   Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. Title 28 U.S.C. § 2674 reads in pertinent part: The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

2. As originally filed, this case contained two separate causes of action. The Government's motion for summary judgment, which the district court granted on May 25, 1977, was with respect to the first cause of action only. Plaintiff's second cause of action, for malpractice, was dismissed by stipulation of the parties on July 8, 1977. The district court thereupon entered its judgment dismissing the entire action. It is from this final judgment that plaintiff now appeals pursuant to 28 U.S.C. § 1291.

3. Precisely how much or what kind of information and cooperation was required before the Government became obliged to pay Wheeler for a job is unclear from the record. The record shows that in the only other transaction before the events leading to plaintiff's injury, Bender attempted to set up a "buy" of heroin in Berkeley from a person introduced by Wheeler, the deal fell through, and Wheeler was not paid. Plaintiff also alleges that Bender gave him some kind of assurances that he would aid Wheeler in applying for federal aid to his community services project.

On the day he was injured, Slagle voluntarily accompanied Wheeler at Wheeler's request. A narcotics dealer named "John-John," about whom plaintiff was attempting to secure information, had requested Wheeler to accompany him and another man on a trip to Napa to collect money owed to John-John and to offer illegal drugs for sale. According to plaintiff, Bender was aware generally that Wheeler was attempting to befriend John-John in order to set up a drug transaction between John-John and BNDD agents. Wheeler was carrying a gun, in violation of the BNDD guidelines.[4] Before leaving for Napa, Wheeler called the BNDD. Bender, his contact at the agency, was unavailable for reasons which the record does not disclose. Wheeler left a message regarding his plans to travel to Napa and the general purpose of the trip, but did not secure approval for the trip from anyone at the agency.

At the meeting place in Napa, an argument broke out regarding collection of the money, and Wheeler drew a gun. The argument continued and Wheeler struck one of the residents of the house. A shooting ensued, and as Slagle ran toward the car he was shot in the back and paralyzed. He was driven away from the site by John-John, apparently at the direction of one of the residents of the house, and left alongside the highway.

On October 16, 1974, one day before expiration of the mandatory claim period for filing claims, 28 U.S.C. § 2401(b), plaintiff served a purported claim under the FTCA on four government agencies. The agencies either returned plaintiff's claim or took no action on it.[5] Receiving no decision from the agencies within six months after filing the claim, 28 U.S.C. § 2675(a), plaintiff filed suit against the United States.

Plaintiff's complaint is vague as to which acts of Wheeler or the Government were negligent. Plaintiff states only that

> employees, agents or servants of [the United States] did cause the plaintiff to participate in a narcotics investigation and arrest by going to a certain location in the County of Napa, [and]

> That at said time and place defendant [the United States] knew or should have known that an arrest would occur, and knew or should have known that the arrest would be resisted with and met by deadly force and that said meeting which defendant caused plaintiff to make would be extremely hazardous for plaintiff and failed to advise plaintiff of same.

In later proceedings below, plaintiff alleged Wheeler was negligent in various respects, and that the United States is responsible in these circumstances for Wheeler's negligence. Plaintiff states only in vague terms the acts allegedly constituting Wheeler's negligence. He claims Wheeler negligently handled some facet of the transaction in Napa, but fails to elaborate; he claims Wheeler negligently carried a gun to the meeting, although plaintiff was clearly aware of this fact; finally, he claims Wheeler was negligent in some respect in not notifying the BNDD before taking the trip.

*Independent Contractor or Employee*

■ The district court concluded that Wheeler was not an employee, but instead

---

4. Wheeler had asked the BNDD for a permit to carry a concealed weapon, and the agency had denied his request.

5. Our disposition makes it unnecessary to consider the issue, but we have grave doubts whether plaintiff's claim, which did not include the name of any government agency, the date on which the incident occurred, clear identification of the place of the injury, the names of any BNDD agents involved, or the fact that drugs were involved, was sufficiently complete that the receiving government agencies were obliged to transfer the claim to the appropriate agency pursuant to 28 C.F.R. § 14.2(a). We doubt that service on the Department of Justice was service on "the appropriate agency," 28 U.S.C. § 2675(a), since the BNDD is only one of twenty-two separate agencies within the Department. Finally, plaintiff has presented no amplification on this appeal of the manner in which the alleged promise of an HEW employee on November 1, 1974, about two weeks beyond the two-year limitation period on FTCA claims, to investigate plaintiff's claim further would activate the relating-back provisions of 28 C.F.R. § 14.2(a).

was an independent contractor. We disagree with the court's characterization of Wheeler as an independent contractor, but agree with the portion of the court's opinion holding Wheeler was not an employee, as defined in 28 U.S.C. § 2671. With appropriate changes in footnote numbering, we adopt the district court's careful analysis of the employee issue and set it forth as follows:

Federal courts must apply federal law in determining whether an individual is a federal employee. *United States v. Becker,* 378 F.2d 319 (9th Cir. 1967); *Brucker v. United States,* 338 F.2d 427 (9th Cir. 1964), *cert. denied,* 381 U.S. 937 [85 S.Ct. 1769, 14 L.Ed.2d 701] (1965). In *United States v. Becker,* the court followed the Restatement (Second) of Agency, § 220(2) (1958), definition of "servant" in defining "employee." 378 F.2d at 321. That definition reads as follows:

"(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is part of the regular business of the employer;

"(i) whether or not the parties believe they are creating the relation of master and servant; and

"(j) whether the principal is or is not in business."

Additional criteria applied by the court in *Becker* to distinguish an employee from an independent contractor were no fixed salary on a regular basis, not subject to tax deductions, can refuse the call for assistance, not required to be available at a particular time, and worked under a contract and was paid by voucher. 378 F.2d at 322.

Beginning with subsection (1) of the Restatement definition, a servant performs services in the affairs of another and is subject to the other's control or right to control in the performance of those services. Plaintiff declares that he understood that Wheeler was recruited "to gain and supply information regarding organized importation and marketing of heroin and cocaine." Declaration of Larry M. Slagle, p. 2 (filed 3/11/77).

Special Agent Bender, Wheeler's BNDD contact, states in his affidavit that he informed Wheeler of the general guidelines which an informant must comply with:

"A. If an informant was arrested for possession of drugs and had not received advanced approval from us, we would not intervene on his/her behalf.

"B. An informant should not carry a gun while actively seeking out information. If an informant was arrested for assault with a deadly weapon, we would not intervene on his/her behalf.

"C. An informant was not to contact any 'source' without first notifying the agent with whom he worked. This was established to permit early BNDD involvement in the investigation and to avoid the defense of entrapment.

"D. In order to serve as an informant, he should refrain from violating the law and the use of drugs or narcotics.

"Other than these guidelines, the informant has total discretion to arrange the meetings and conduct his activities. Payments for successfully completed jobs would be in the form of cash." Affidavit of Robert Bender, p. 2 (filed 2/2/77).

In general, the activities of an informant are not subject to the actual control or right of control of a federal agent.

In subsection (2), factors used to distinguish the servant from the independent contractor are listed. Subsection (2)(a) lists as a factor the extent of control which, by the agreement, the master may exercise over the details of the work. The extent of control over the details of Wheeler's work by Special Agent Bender was extremely small. There was no written contract. Wheeler had not contacted Special Agent Bender to inform him of his trip to Napa, contrary to the general guidelines, nor was he sent to Napa by the BNDD.

Moreover, Petrossi [Bender's superior at the BNDD] testified at Wheeler's state trial that informants are instructed not to carry weapons. The lack of control that the BNDD has over Wheeler is demonstrated by the fact that he carried a gun contrary to instructions while making an investigation. The facts of the case indicate that the agents had no right of control nor actual control of Wheeler.[6]

[6] This is in contrast to the facts of *United States v. Becker,* 378 F.2d 319 (9th Cir. 1967), wherein a pilot was found to be an employee of the United States. There, the Court of Appeals expressed some doubt as to the employee status of the pilot, but affirmed the district court on the grounds that its finding that the pilot was an employee was not clearly erroneous. In *Becker,* there was a written agreement between the Forest Service and the pilot; the pilot had to undergo elaborate testing procedures; the pilot was required to meet Forest Service requirements found in the Forest Service Handbook which contained detailed regulations for operation of aircraft; the pilot operated under the specific directions of a Fire Control Officer who told him where to go and what to do. 378 F.2d at 322–323. The BNDD did not have comparable control over Wheeler.

The method of payment, subsection (2)(g), also indicates that Wheeler was not an employee of the BNDD. Special Agent Bender's Affidavit states that no payment was ever made to Wheeler for his services even though he had been an informant for the BNDD for almost a month at the time of the shootout.

The place of work, instrumentalities, or tools, subsection (2)(e), were not supplied by the BNDD. Working as an informant is the kind of work that is usually done without supervision, subsection (2)(c).

*Negligent Selection of Wheeler*

We also agree with the district court's conclusion that the Government was not negligent in selecting Wheeler as an informer. On this point the district court held, and we agree, as follows:

The standard of care applied in selecting Wheeler as an informant is here in issue. Plaintiff does not attack the BNDD's policy with respect to the selection of informants, and rightly so. This general policy is a discretionary function which may not be challenged under the Act. 28 U.S.C. § 2680. However, the Court may look to the manner in which the BNDD selected this particular informant.

Special Agent Bender states in his affidavit that Wheeler came forward and volunteered to be an informant. As described in a record in Wheeler's BNDD file, the agency checked Wheeler's criminal record and drug use. The BNDD ascertained that he was not using narcotics at the time of his establishment as an informant. His arrest record showed three arrests; in two of them, charges were dismissed, and one resulted in six months' court probation. Inquiries were made of the Richmond Police Department, Contra Costa Sheriff's Office, California Bureau of Criminal Investigation and Identification, as well as the Contra Costa, California, and Federal Parole departments. When no criminal activity was discovered, Wheeler was established

as an informant. Following the shootout in Napa, the BNDD terminated Wheeler as an informant.

Considering all the circumstances surrounding the selection of Wheeler, the Court concludes that the BNDD was not negligent in its selection of Wheeler as an informant. The BNDD selected an individual who could make contact with drug dealers but who did not use drugs himself and had not committed any serious crimes. This was reasonable care in the selection of an informant.

*Negligent Communication System*

■ Slagle also claims that the Government itself was negligent in failing to establish and maintain "a foolproof means of rapid communication" between drug informants and their contacts. The Government's decision regarding the kind of communication system it wishes to establish between informants and their contacts, and in particular the policy decision whether the benefits of a "foolproof means of rapid communication" justify the associated costs, is, like the decision to use informants in the first place, a discretionary function immune from challenge under the Act. 28 U.S.C. § 2680. *See generally Thompson v. United States,* 592 F.2d 1104 (9th Cir. 1979); *Driscoll v. United States,* 525 F.2d 136 (9th Cir. 1975); *Downs v. United States,* 522 F.2d 990 (6th Cir. 1975); *Redmond v. United States,* 518 F.2d 811 (7th Cir. 1975); *Blessing v. United States,* 447 F.Supp. 1160 (E.D. Pa.1978).

*Ultra-hazardous Activity*

■ There remains the question whether or not Wheeler was an independent contractor of the Government. If he were, the plaintiff could contend that the Government is liable under the nondelegable duty doctrine applicable to dangerous activities. Historically, the employer of an independent contractor was not liable for the misconduct of the contractor or his employees. *Thorne v. United States,* 479 F.2d 804, 808

(9th Cir. 1973). One rationale for this rule is that the employer has little or no authority to direct the performance of the contractor.

A major exception to the above rule now appears well-settled, at least as far as private employers are concerned. The Restatement (Second) of Torts imposes a nondelegable duty of due care on the employer of an independent contractor where the work to be performed involves special dangers. Restatement (Second) of Torts § 416 (1965) provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Similarly, Restatement (Second) of Torts § 427 (1965) provides:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

The California courts have embraced the principle described in these Restatement sections, *see, e. g., Van Arsdale v. Hollinger,* 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508 (1968); *Aceves v. Regal Pake Brewing Co.,* 24 Cal.3d 502, 156 Cal.Rptr. 41, 595 P.2d 619 (1979). This circuit has applied some version of the nondelegable duty doctrine in FTCA cases, *see, e. g., Thorne v. United States,* 479 F.2d 804 (9th Cir. 1973); *McGarry v. United States,* 549 F.2d 587 (9th Cir. 1976).[6]

---

**6.** This court has recently expressed doubt whether, to the extent the nondelegable duty

doctrine equates employees and independent contractors for purposes of determining liabili-

We need not decide whether the activities of a drug informant involve peculiar risks or special dangers to others, as defined in Restatement sections 416 or 427, for we conclude Wheeler here was not acting as an independent contractor. We think that during the time the events in question occurred, Wheeler did not have a sufficiently close relationship with the Government that he could be characterized as an "independent contractor," as that term is used in the Restatement of Torts and the cases cited above. Of course, an independent contractor does not lose his status as such simply because he breaches his contract by violating safety provisions specified by the employer. Both the Restatement and the relevant cases recognize that the employer may sometimes be liable for the independent contractor's negligence even when it requires by contract that certain precautions be taken. In this case, however, Wheeler's proceeding with the meeting without first notifying BNDD agents constituted more than simply a failure of an independent contractor to take required safety precautions. In these circumstances the relation of employer and independent contractor simply failed to arise.

The relationship between Wheeler and the Government was one in which the Government initially expressed a willingness to deal with Wheeler on certain terms, such as compliance with the guidelines. Wheeler was required to make an offer to the Government before undertaking an assignment. Prior notification was a prerequisite to the contractual relationship. Wheeler was neither authorized nor obliged contractually to do anything for the BNDD prior to contacting it and obtaining permission to attempt a particular drug transaction. The record shows that he had contacted the Government for a job only once previously, and that assignment had failed. Similarly, we doubt that the BNDD was obliged to pay Wheeler for information he gathered, absent such notification.[7]

In the normal independent contractor case addressed in the authorities cited above, the employer may not know the independent contractor is violating the contract safety provisions, but it does know that the contractor is working and that he is authorized, indeed obliged, to further the employer's purposes by engaging in hazardous activities. Here, because of Wheeler's failure to inform the Government, there was no opportunity for the Government either to deny approval for the trip, or to take whatever safety precautions it may have found necessary. Wheeler may not have been a complete stranger or volunteer vis-a-vis the Government during the events in question, but he more closely resembled a volunteer than an independent contractor.[8]

There may be times where an informer such as Wheeler, working under government supervision, could act negligently in ways making the United States liable as the employer of an independent contractor. Agreeing to become a government informant, however, does not make a person an independent contractor at all times thereafter, and does not result in the Government's being held liable at all times for the negligence of the informant.

Plaintiff's other contentions on this appeal are without merit. For the above rea-

---

ty, the FTCA ought to be interpreted as permitting imposition of liability on the Government in every circumstance where a private employer would be liable under such a theory, *see* Bramer v. United States, 595 F.2d 1141, 1144 n.8 (9th Cir. 1979).

7. We do not foreclose the possibility that in some future case involving a long period of relations between the Government and an informant, where the Government had routinely approved many proposed activities of the informant, the Government could be held to have impliedly approved an act taken without the informant securing prior authorization.

8. Our conclusion also finds some support in the fact that the BNDD told Wheeler it could treat him as a stranger if he violated the guidelines; indeed, Wheeler was prosecuted by state authorities for attempted murder, with BNDD's knowledge. While we assume the BNDD could similarly disclaim the acts of an acknowledged employee, the serious consequences of noncompliance with the guidelines illustrates the importance attached to them by the BNDD in regulating its dealings with informants.

sons, the judgment of the district court is AFFIRMED.