Hira PATEL, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. C 92–20161 EAI.

United States District Court, N.D. California.

Nov. 13, 1992.

Thomas Boehm, San Jose, Cal., for plaintiff.

William F. Murphy, Asst. U.S. Atty., for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS

INFANTE, United States Magistrate Judge.

### I. *Nature of the Action*

Plaintiff Hira Patel ("Patel") has sued the United States, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Section 1346(b), for property damage and emotional distress damage on a claim of negligence arising out of a Drug Enforcement Administration raid.[1] Patel is the owner of certain real property located at 14555 Mount Hamilton Road in San Jose, California. During early 1991, the San Jose Police Department, in cooperation with the United States Drug Enforcement Administration ("DEA"), was investigating the possession for sale of methamphetamine occurring at Patel's property. At all relevant times

herein, the property was leased to Gregory Brookins, the person whom the DEA suspected to be a methamphetamine dealer. On March 18, 1991, Judge Edward Nelson of the Municipal Court of the County of Santa Clara issued a search warrant for a daytime or nighttime search of the property.

On March 19, 1991, at 4:50 a.m., at least ten DEA agents entered the property to serve the search warrant. At least some of the "agents" were actually part of the San Jose Police Department's MERGE unit under the direction of other San Jose police officers who had been deputized as DEA agents. Shortly after arriving at the property, the officers forcibly entered the residence located there. Upon entry, the officers were met with gunfire which immediately resulted in the wounding of one officer. The gunfire from within the house persisted. While being "covered" by other officers who were firing MP–5 submachine guns into the house, one officer delivered at least one, perhaps two, pyrotechnic explosive devices ("PED") into the house, according to copies of police reports submitted as exhibits to defendant's motion. When the PEDs "went off" two officers, still being "covered" by MP–5 submachine gun fire, entered the house and pulled the injured officer to safety.

Thereafter, a woman and a small child exited the house, followed by a male other than Brookins. The gunfire from within the house continued. In response, the officers introduced non-flammable tear gas projectiles into the house.[2] Patel contends that when the officers ran out of non-flammable tear gas projectiles they began firing flammable projectiles and continued doing so until every last available flammable projectile was used even though the house was on fire. The house eventually burned completely to the ground. Mr.

---

1. Patel's negligence claim (Count II of the Complaint) is the only claim remaining before this court. By order entered June 29, 1992 the court dismissed Patel's claims for inverse condemnation and strict liability, struck plaintiff's jury demand and prayer for attorneys fees, and limited plaintiff's prayer for damages to $575,000,

the amount of his administrative claim against the United States.

2. It is not clear from the briefs submitted by the parties what difference, if any, exists between PED's and tear gas projectiles.

Brookins was never seen leaving the house and apparently died in the fire.

Patel's complaint alleges that, as part of the efforts to serve the warrant, DEA agents fired smoke grenades, tear gas canisters, and percussion/flash grenades into the residence on the property, which directly and proximately caused the complete destruction by fire of the residence located on the property. Patel also alleges that the acts of the DEA agents necessarily involved a risk of serious harm to the property and it was a foreseeable consequence of the activity that the property could be seriously damaged. Patel further alleges that these acts and/or omissions of the DEA agents were negligent. Finally, Patel alleges that as a direct and proximate result of the DEA's activities he has suffered injury to his nervous system and peace of mind, causing him emotional distress.

### II. *Motions Before the Court*

Pursuant to Rule 12(b)(1), F.R.Civ.P., defendant moves to dismiss Count II of the complaint for lack of subject matter jurisdiction. Defendant contends that the conduct of which Patel complains is not actionable pursuant to the discretionary function exception to the FTCA, an exception to the United States' waiver of sovereign immunity under the FTCA. 28 U.S.C. Section 2680(a). Accordingly, defendant argues, the court lacks jurisdiction of the subject matter of the action. Defendant also moves to dismiss plaintiff's claim for emotional distress for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), F.R.Civ.P.

### III. *Defendant's 12(b)(1) motion—The Discretionary Function Exception*

#### A. *Applicable Law*

■ Under the doctrine of sovereign immunity, the United States is immune from suit unless it consents to be sued. The scope of its consent defines the court's jurisdiction to entertain the suit. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Count II of plaintiff's complaint is brought pursuant to the FTCA, 28 U.S.C. Section 1346(b). The FTCA provides for a limited waiver of the United States' sovereign immunity in

lawsuits alleging negligent conduct of a United States employee.

However, the FTCA also provides for exceptions to that waiver. Those exceptions are enumerated within the statute and include the discretionary function exception, 28 U.S.C. Section 2680(a), which provides in pertinent part:

> The provision of this chapter and section 1346(b) of this title shall not apply to— [a]ny claim ... based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

■ In a line of cases beginning with *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Supreme Court has repeatedly examined the discretionary function exception. Most recently, in *United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Court reaffirmed its decisions in *United States v. S.A. Empressa de Vicao Aerea Rio Grandense ("Varig Airlines"),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), and *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), holding that there are two basic elements to the exception. First, the exception applies to acts that involve an element of judgment or choice. *Gaubert, supra,* —— U.S. at ——, 111 S.Ct. at 1273. Second, the challenged conduct must be of the type that the discretionary function exception was designed to shield. *Id.* at ——, 111 S.Ct. at 1273.

In *Gaubert,* the Court held that the exception was designed to shield actions based on considerations of public policy, and grounded in social, economic and political policy. *Id.* at ——, 111 S.Ct. at 1273. The Court further held that the applicability of the exception depends on the nature of the conduct rather than the status of the actor, and for the first time specifically rejected an analysis based on whether the activity was undertaken at the operational level or at the planning level of government activity. *Id.* at ——, 111 S.Ct. at

1275. Hence, the exception does not refer exclusively to policy making or planning functions. *Id.* at ——, 111 S.Ct. at 1275. In addition, "when established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when making that decision." *Id.* at ——, 111 S.Ct. at 1274.

The parties cite numerous decisions, both pre and post *Gaubert*, from the lower federal courts in other jurisdictions which apply these rules by engaging in a fact specific analysis. The results reached are widely varied and therefore provide little guidance.[3]

At the hearing on these motions, defendant specifically relied on several prior decisions which involved law enforcement activities. Defendant cites to *Rourke v. United States*, 744 F.Supp. 100, 102 (E.D.Pa.1988), in which the court held that the manner of conducting an investigation and the decision to seek an arrest warrant are discretionary activities for which sovereign immunity has not been waived. However, the *Rourke* court also held that "to the extent that plaintiff alleges he was assaulted in the course of being arrested, the government is not protected from liability." *Id.* at 102. In the instant case, plaintiff focuses on the officers' conduct in the course of serving the search warrant and the resultant physical damage to the property, not on the DEA's decision regarding the manner of the investigation or the decision to seek a warrant. Accordingly,

*Rourke* does not support defendant's position here.

Defendant also cites to *Gray v. Bell*, 712 F.2d 490 (D.C.Cir.1983). In *Gray*, the court held that prosecutorial decisions as to whether, when and against whom to initiate prosecution are protected by the discretionary function exception. Again, the conduct complained of here is of a different sort than the prosecutorial decisions protected in *Gray*. Hence, *Gray* is distinguishable from the case at bar.

Defendant also relied on *Slagle v. United States*, 612 F.2d 1157 (9th Cir.1980) in which the Ninth Circuit affirmed the district court's ruling that the government's general policy with respect to the use of government informants was a protected discretionary function. *Id.* at 1161. The Ninth Circuit also held that the "government's decision regarding the kind of communication system it wishes to establish between informants and their contacts ... is, like the decision to use informants in the first place, a discretionary function immune from challenge under the Act." *Id.* at 1162.

However, the court of appeals also agreed with the district court's ruling that the manner in which the government selected a particular informant is not protected by the discretionary function exception. *Id.* at 1161–1162. The court of appeals concurred with the district court's finding at trial that the government's selection of the informant in *Slagle* was not negligent. However, the appellate court would not have reached the issue of negligence if the government's selection of the particular in-

---

**3.** *See, e.g., Industria Panificadora, S.A. v. United States*, 957 F.2d 886, 887 (D.C.Cir.1992) (alleged failure to provide adequate police protection during and after the invasion of Panama protected by discretionary function exception); *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1198 (D.C.Cir.1986) (decision not to reestablish FBI presence on Indian reservation and failure to make contingency plans prior to uprising protected by discretionary function exception); *Monarch Ins. Co. v. District of Columbia*, 353 F.Supp. 1249, 1256–1259 (D.D.C. 1973) (planning and execution of riot control activities by the National Guard protected by the discretionary function exception); *United States v. Faneca*, 332 F.2d 872, 874 (5th Cir.

1964) (decision re: handling of unruly mob protected by the exception). *But See, Caban v. United States*, 671 F.2d 1230 (2d Cir.1982) (INS agents' decision to detain plaintiff at border crossing not protected by exception); *Sullivan v. United States*, 129 F.Supp. 713 (D.Ill.1955) (FBI agent's conduct in operating a vehicle while in hot pursuit of a suspect not protected by the exception); *Downs v. United States*, 522 F.2d 990 (6th Cir.1975) (FBI agent's decision to refuse to allow refueling and to use rifle fire to disable aircraft's engines was not protected by the discretionary function exception because the agent was not making policy decisions in the course of responding to particular hijacking.)

formant was a protected discretionary function. Accordingly, *Slagle* does not support defendant's contention that all of the choices made and actions taken by the officers are protected by the discretionary function exception.[4]

More importantly, recent decisions from the Ninth Circuit support plaintiff's position here. In *Prescott v. United States of America*, 973 F.2d 696 (9th Cir.1992), plaintiff alleged that the government negligently failed to safely operate a nuclear test site. The court held that the government had failed to come forward with sufficient evidence that the conduct complained of involved an element of judgment or that "the judgment (if any) was grounded in social, economic, or political policy." *Id.* at 700.

*Arizona Maintenance Co. v. United States*, 864 F.2d 1497 (9th Cir.1989), decided after *Berkovitz, supra,* involved the government's program to regulate the flow of the Colorado River in order to, *inter alia,* provide adequate water supplies and added electrical power generation. The court outlined the appropriate analysis as follows:

> Conduct of a government agency or employee is not immune from scrutiny as a "discretionary function" simply because it involves an element of choice. It must be a choice rooted in social, economic, or political policy. If it is a choice to be exercised within established safety standards, and the plaintiffs claim negligence in failure to follow such standards, the discretionary function exception does not apply. *Id.* at 1504.

The court held that the government's decision to use seismic refraction surveys conducted by means of dynamite blasts to determine the extent of possible subsidence caused by pumping out of the underground water system was not protected by the exception. Specifically, the court held that "the choice of how much dynamite to use at the particular location was not one grounded in social, economic, or political policy." *Id.* at 1504. The court further stated that the decision to use the cheapest and easiest method in contravention of safety standards could not be a protected discretionary function. *Id.* at 1504. The court in *Arizona Maintenance* relied on the Supreme Court's decision in *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), in which the Court held that, although the government's decision to undertake the maintenance of a lighthouse was discretionary, its decision to leave it in disrepair was not. *Arizona Maintenance*, at 1504.

The *Arizona Maintenance* court also cited to its previous decision in *ARA Leisure Services v. United States*, 831 F.2d 193, 195 (9th Cir.1987). In *ARA* the Ninth Circuit held:

> ... [W]here the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the [discretionary function] exception falls away and the U.S. will be held responsible for the negligence of its employees.

*Quoting, Aslakson v. United States,* 790 F.2d 688, 693 (8th Cir.1986).[5]

---

4. Defendant also cites to *Amato v. United States,* 549 F.Supp. 863 (D.N.J.1982). *Amato* was decided in a distant district before the Supreme Court clarified its interpretation of the discretionary function exception in *Gaubert* and *Berkovitz, supra.* Accordingly, *Amato* is non-binding authority, and the court does not concur in the reasoning therein.

5. *See also, Pope & Talbot v. Department of Agriculture,* 782 F.Supp. 1460 (D.Or.1991) a forest fire on federal land, probably caused by humans, spread to plaintiff's property, destroying 960 acres of Pope's timberland. Plaintiff alleged that the United States was negligent "in

failing to close its land and/or deny access to the public under the weather conditions and potential and known fire hazards then and there existing which defendant knew or in the exercise of reasonable care should have known or anticipated." *Id.* at 1461. The court held that the discretionary function exception barred the lawsuit because the government official making the decisions was operating under a plan which provided guidelines to help managers make decisions regarding access to the forest and proffered criteria the officials *could* choose to consider and actions he *could* choose to take. *Id.* at 1466. Defendant has cited no such plan here.

## B. *Analysis*

In his answers to Defendant's First Set of Interrogatories, Patel contends, *inter alia*, that the DEA was negligent in the following respects: (1) conducting the raid, (2) allowing the raid to proceed when there was inadequate cover at the site, (3) deploying flammable tear gas projectiles, (4) supplying the unit with an inadequate supply of non-flammable tear gas projectiles, (5) not controlling the number and type of projectiles fired, (6) allowing flammable projectiles to be fired into a house suspected of containing volatile chemicals, and (7) not ordering a cease fire to allow Brookins to surrender. Patel argues that these actions did not involve weighing of public policy considerations, and were not rooted in social, economic or political policy.

The decisions made and the actions taken by the officers in the course of serving the search warrant did involve matters of judgment or choice. The officers at the scene clearly had a choice as to what specific actions to take in the course of serving the warrant.

■ However, some of the decisions made and actions taken by the officers in the course of serving the search warrant were not based on considerations rooted in economic, social, or political policy. Defendant argues that, consistent with its mission, the DEA endeavors to make cases exposing illegal narcotics activities on the strongest possible evidence. However, the employment of a method which resulted in the total destruction of all evidence at the scene, including Mr. Brookins, the target of the investigation, can hardly be said to be in furtherance of that mission or based on considerations of public policy. The facts of this case are analogous to the situation in *Arizona Maintenance, supra.* The DEA's decisions to investigate the alleged illegal activity, to obtain the search warrant, when and where to serve the warrant, and to use the MERGE unit personnel to execute the warrant are of the sort that are based on public policy considerations. However, the officers' decisions to use flammable tear gas projectiles (instead of non-flammable projectiles) in an amount sufficient to completely destroy the structure at the scene were not based on considerations rooted in social, economic or political policy just as the decision regarding the amount of dynamite used at the site in *Arizona Maintenance* was not grounded in social, economic, or political policy. To follow defendant's reasoning would be to hold that all actions taken in the course of serving a search warrant are protected by the discretionary function exception. Defendant cites no authority for such a proposition and the court has found none.

## IV. *Defendant's 12(b)(6) Motion— Plaintiff's Claim for Emotional Distress*

### A. *Applicable Law*

Prior to 1968, under California law, a plaintiff could not recover damages for negligent infliction of emotional distress where the plaintiff fell outside the zone of danger flowing from the defendant's conduct. *Amaya v. Home Ice, Fuel and Supply Co.*, 59 Cal.2d 295, 29 Cal.Rptr. 33, 379 P.2d 513 (1963). However, in *Dillon v. Legg*, the California Supreme Court rejected the so-called "zone of danger rule" in favor of a rule which allows recovery for emotional distress in a broader range of cases. 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). In *Dillon*, the court held that a bystander could recover damages for emotional distress if the defendant should have reasonably foreseen the potential injury to the plaintiff. *Id.* The court further held that in making this determination three factors should be considered: (1) whether or not the plaintiff was at or near the scene of injury, (2) whether the shock resulted because of sensory or contemporaneous observance of the accident (as opposed to learning about the incident later), (3) whether the plaintiff and the victim were closely related. *Id.* at 740–741, 69 Cal.Rptr. 72, 441 P.2d 912. Subsequently, the California Supreme Court also allowed recovery for emotional distress unaccompanied by physical injury. *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980). In *Molien*, the court held that even though nei-

ther plaintiff nor his wife suffered any physical injury, the defendant's conduct "foreseeably elicited serious emotional responses in the plaintiff and hence serve as a measure of the validity of plaintiff's claim for emotional distress." *Id.* at 930–931, 167 Cal.Rptr. 831, 616 P.2d 813.

However, no California court "has ever allowed recovery for emotional distress arising solely out of property damage absent a threshold showing of some preexisting relationship or intentional tort. *Cooper v. Superior Court,* 153 Cal.App.3d 1008, 200 Cal.Rptr. 746 (2d Dist.1984); *See also, Sher v. Leiderman,* 181 Cal.App.3d 867, 226 Cal.Rptr. 698 (6th Dist.1986). The preexisting relationship must involve an aspect of trust and confidence giving rise to a duty of care. *Sher,* at 884, 226 Cal.Rptr. 698. Preexisting relationships giving rise to such a duty include that between an insurer and an insured, *Jarchow v. Transamerica Title Ins. Co.,* 48 Cal.App.3d 917, 122 Cal.Rptr. 470 (1975); *Crisci v. Security Ins. Co.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967), and that between a bailor and a bailee, *Windeler v. Scheers Jewelers,* 8 Cal.App.3d 844, 88 Cal.Rptr. 39 (1st Dist. 1970).

B. *Analysis*

■ All of Patel's losses in this action arise solely out of the damage to his property at 14555 Mount Hamilton Road. Patel contends that the agreement between the City of San Jose Police Department and the DEA providing for cooperation between the two law enforcement agencies in the investigation of drug trafficking (which provided the mechanism for the DEA search on March 19, 1991) was entered into for the benefit of the citizens of San Jose. Patel argues that this is sufficient to establish the preexisting relationship required by *Cooper* and *Sher.* Patel does not contend that he had any prior knowledge of the agreement between the City and the DEA, or that he relied on it in any way. Simply put, the attenuated relationship between Patel and the DEA is not the sort of rela-

tionship of trust and confidence contemplated by *Cooper* and *Sher.* Accordingly, Patel has failed to state a claim for emotional distress upon which relief may be granted.

V. *Conclusion*

In light of the principles discussed above, the court finds that some of the choices made and the actions taken by the officers at 14555 Hamilton Road in San Jose on March 19, 1991 were not grounded in social, economic, or political policy as required by *Gaubert, supra.* Hence, the DEA's conduct is not protected by the discretionary function exception to liability under the FTCA. Accordingly, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED. However, Patel has failed to state a claim for emotional distress upon which relief may be granted. Accordingly, Defendant's Motion to Dismiss Plaintiff's Claim for Emotional Distress pursuant to Rule 12(b)(6) is GRANTED.

IT IS SO ORDERED.[6]

---

**6.** The parties have consented that all proceedings, including trial, in the above entitled case may be heard and finally adjudicated by the assigned magistrate judge, pursuant to Rule 73, F.R.Civ.P. and 28 U.S.C. Section 636(c).