**ARIZONA MAINTENANCE CO.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

**No. 87–2471.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1988.

Decided Jan. 10, 1989.

John F. Molloy, Molloy, Molloy, Jones & Donahue, Tucson, Ariz., for plaintiff-appellant.

James D. Whitney, Asst. U.S. Atty., Tucson, Ariz., for defendant-appellee.

Before GOODWIN, SCHROEDER and POOLE, Circuit Judges.

SCHROEDER, Circuit Judge:

Appellant Arizona Maintenance Co., a public utility serving domestic and commercial water users in Arizona, filed this suit against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2674. Arizona Maintenance claimed that blasting done by the United States in connection with construction of the Central Arizona Project seriously damaged Arizona Maintenance's water system. The district court granted Appellee's Motion to Dismiss and/or for Summary Judgment, holding that the government's decision to blast and the manner in which it blasted were discretionary decisions protected by the discretionary function exception to the FTCA. We review the district court's decision in light of the Supreme Court's recent decision in *Berkovitz v. United States,* —— U.S. ——, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

## BACKGROUND

In 1968, the Colorado River Basin Project Act established the Central Arizona Project ("CAP"). 43 U.S.C. § 1521. The CAP is part of a program designed to regulate the flow of the Colorado River in order to provide adequate water supplies, improved navigation, added outdoor recreation areas, improved wildlife conditions and added electrical power generation. 43 U.S.C. § 1501(a). The Act places upon the Secretary of the Interior responsibility for constructing, operating and maintaining the aqueducts, pumping plants, canals, power plants and drainage works that are a part of the CAP. 43 U.S.C. § 1521(a).

In carrying out this responsibility, the Secretary of the Interior has the authority to conduct investigations concerning the optimum route for the CAP. *See* 43 U.S.C. § 1511. In determining this route, proposed routes must be studied to determine the amount of possible subsidence, or settling of the land created by pumping out the underground water system. The probability of subsidence greatly affects the path of the CAP aqueducts.

In the Tucson area, at least a portion of a proposed canal route ran near wells operated by the appellant Arizona Maintenance. It became necessary in 1984 for the Bureau of Reclamation to determine the amount of possible subsidence on that route. According to the government's affidavits attached to its moving papers in the suit, there were three options available for determining whether subsidence was a factor along the proposed route: researching available geologic information, test drilling the soil, or using seismic refraction surveys conducted by means of dynamite blasts.

In this case, the Chief of the Geology and Exploration Branch of the Bureau of Reclamation chose to investigate subsidence by using the dynamite blast option, giving as his reasons that blasting was less expensive and less time-consuming than drilling. The record does not indicate what, if any, factors the construction industry generally considers in deciding which methods to use in determining subsidence.

The government proceeded in 1984 to blast in the area of appellant's wells. The blasting damaged appellant's domestic water system, including extensive damage to at least one of appellant's wells. Appellant sued under the Federal Tort Claims Act. Its complaint alleged first that the government was negligent in using the blasting method to determine subsidence when other available methods would have provided adequate information with less risk. In addition, appellant claimed that the government negligently used too much dynamite

when it blasted, resulting in damage to appellant's water system. It alleged damages in excess of $4,000,000.

The government moved for summary judgment on the ground that its decision to use dynamite blasting, and the manner in which the blasting was conducted, were within the FTCA's discretionary function exception which shields the government from liability. The district court granted the government's motion, holding that because the government employee had a choice as to how to proceed, both the decision to use dynamite and its implementation were discretionary functions. We have held that review of a district court determination of subject matter jurisdiction under the discretionary function exception is de novo. *Mitchell v. United States*, 787 F.2d 466, 468 (9th Cir.1986), *cert. denied*, — U.S. —, 108 S.Ct. 163, 98 L.Ed.2d 118 (1987).

## DISCUSSION

The FTCA is a broad authorization for suits against the United States

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). While the Act provides that the United States is liable for torts in the same manner and to the same extent as private individuals, 28 U.S.C. § 2674, the Act carves out an exception, and thus retains government immunity for performance of discretionary functions or duties. This "discretionary function" exception has been the subject of much litigation in recent decades. It provides that the government is not liable for

[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or

an employee of the Government, whether or not the discretion involved be abused. 28 U.S.C. § 2680(a).

The statute does not further elucidate Congressional meaning. A 1942 House Report describing the exception and quoted in many later reports is not much more helpful, but it does suggest that the exception is based upon preserving immunity for the formulation of statutory or regulatory policy. The Report states that the exception bars claims based upon

the performance or nonperformance of discretionary functions, whether or not the discretion involved be abused, and claims based upon the act or omission of a Government employee exercising due care in the execution of a statute or regulation, whether or not valid. This is a highly important exception, intended to preclude any possibility that the bill might be construed to authorize suit for damages against the Government growing out of an authorized activity ... where no negligence on the part of any Government agent is shown, and the only ground for suit is the contention that the same conduct by a private individual would be tortious, or that the statute or regulation authorizing the project was invalid.

H.R.Rep. No. 2245, 77th Cong., 2d Sess., p. 10; S.Rep. No. 1196, 77th Cong., 2d Sess, p. 7; H.R.Rep. No. 1287, 79th Cong., 1st Sess., pp. 5–6; Hearings Before H. Com. on Judiciary on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess., p. 33, *quoted in Dalehite v. United States*, 346 U.S. 15, 29 n. 21, 73 S.Ct. 956, 964 n. 21, 97 L.Ed. 1427 (1953). The Supreme Court, in describing Congress' overall purpose, has thus said that the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Berkovitz*, 108 S.Ct. at 1958 (quoting *United States S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761–2762, 81 L.Ed.2d 660 (1984)).

The Supreme Court first extensively analyzed the discretionary function exception in 1953. *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). That case involved a catastrophic explosion of fertilizer which was stored as part of a post-World War II program to export fertilizer to occupied countries in order to increase the amount of available food. *Id.* at 19–20, 73 S.Ct. at 959–960. The fertilizer was made with the combustible chemical ammonium nitrate. Plaintiffs sued the government for injuries resulting from the explosion. They alleged that although the government knew that ammonium nitrate was an explosive chemical, it instituted the program without sufficient investigation concerning the properties of the fertilizer, and shipped the fertilizer to a congested area without warning that an explosion was possible. *Id.* at 23, 73 S.Ct. at 961–962.

The Court held that the government's challenged conduct fell within the discretionary function exception. It interpreted the exception as covering conduct linked to the policy-making function of government, stating that "[w]here there is room for policy judgment and decision there is discretion." *Id.* at 36, 73 S.Ct. at 968. The Court's language, however, was expansive, and appeared to sweep within the exception conduct in that case ranging from a cabinet-level decision to store and export the fertilizer, to the lower-level decisions concerning fertilizer loading. The Court stated that "acts of subordinates in carrying out the operations of government in accordance with official directions [issued pursuant to a policy judgment] cannot be actionable." *Id.*

More recently, the Court in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), considered claims that the FAA was negligent in adopting and administering a system of spot checks to ascertain compliance with air safety regulations. In *Varig*, the Court stressed that policy-making was the touchstone for immunity, and seemingly drew back on some of the expansive implications of *Dalehite*. The Court said that the underlying basis of the exception was Congress' wish to prevent "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814, 104 S.Ct. at 2765. Thus,

it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... [T]he basic inquiry concerning the application of the ... exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.

*Id.* at 813, 104 S.Ct. at 2764.

In *Varig* the Court held that the FAA's decision to spot check airline compliance with safety regulations was a protected discretionary decision. The Court described the FAA's decision as a determination that "a program of 'spot-checking' manufacturers' compliance with minimum safety standards best accommodate[d] the goal of air transportation safety and the reality of finite agency resources." This, the Court explained, was "plainly discretionary activity of the 'nature and quality' protected by section 2680(a)." *Id.* at 819–20, 104 S.Ct. at 2767. The Court went on to hold that the FAA system allowed decisions that certain items need not be checked, and that those decisions were also discretionary functions. The Court used language which some courts, including our own, may have misinterpreted as extending the discretionary function exception beyond policy choices to negligent failures to follow known safety standards. The Court stated that "the FAA's alleged negligence in failing to check certain specific items in the course of certificating a particular aircraft falls squarely within the discretionary function exception." *Id.* at 820, 104 S.Ct. at 2768.

This language has created confusion concerning what negligent conduct by federal officials will subject the United States to liability. If taken literally, as the government appears to take it, such language

implies that policy decisions and all conduct carrying out policy decisions are protected by discretionary function immunity, even if government employees are negligent in the course of implementing a policy decision. As a result, the discretionary function exception at times has threatened to swallow the FTCA's general waiver of immunity. For example, in *Begay v. United States,* 768 F.2d 1059 (9th Cir.1985), *cert. denied,* — U.S. —, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988), we said that *Varig* abrogated distinctions between government acts at the planning level as opposed to the "operational" level and left all acts implementing a policy decision protected. *Id.* at 1062 n. 2. *See also Chamberlin v. Isen,* 779 F.2d 522, 524 (9th Cir.1985) (all judgments at both operational and planning level protected); *Cunningham v. United States,* 786 F.2d 1445, 1447 (9th Cir.1986) (both OSHA's decisions establishing safety standards and its allegedly negligent monitoring of a plant under those standards were discretionary decisions shielded from liability); *Proctor v. United States,* 781 F.2d 752, 753 (9th Cir.), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2918, 91 L.Ed.2d 546 (1986) (the FAA's allegedly negligent inspection of an aircraft's cargo compartment resulting in fire was a protected discretionary decision).

Last term, however, the Supreme Court clarified the scope of the discretionary function exception in *Berkovitz v. United States,* — U.S. —, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). In that case, the plaintiff was a child who had been given an oral polio vaccine, had contracted severe polio, and had become paralyzed. Plaintiff sued the United States under the FTCA. Plaintiff claimed that the Division of Biologic Standards (DBS) had wrongfully licensed the manufacturer of the vaccine and also had wrongfully approved release to the public of the offending lot. The district court refused to grant the government's motion to dismiss, finding that neither the licensing of the vaccine nor the release of the specific lot was a "discretionary function" within the meaning of the FTCA. *Id.* 108 S.Ct. at 1957. The Court of Appeals reversed, holding that the licensing and release of polio vaccines were wholly discretionary and were therefore protected under section 2680(a). *Id.* The Supreme Court reversed.

The Supreme Court's unanimous opinion in *Berkovitz* emphasized that the discretionary function exception protects only government actions and decisions that are based on the permissible exercise of policy judgment. *Berkovitz,* 108 S.Ct. at 1959. It made clear that all decisions implementing a discretionary decision are not necessarily protected, but only those where choices are grounded in "social, economic, and political policy." *Berkovitz,* 108 S.Ct. at 1959 (quoting *Varig,* 467 U.S. at 814, 104 S.Ct. at 2765). It also made it clear that government employees are to adhere to objective standards of care, and that conduct which does not adhere to such standards is actionable under the FTCA even though it may be undertaken in implementing a policy decision. *Id.* 108 S.Ct. at 1963.

To illustrate its points, *Berkovitz* discussed a Supreme Court opinion from a quarter century ago that had clearly distinguished between a protected discretionary decision and garden-variety negligence at the operational level. *Id.* 108 S.Ct. at 1959 n. 3. *See, Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). *Indian Towing* involved an accident allegedly caused by the Coast Guard's negligent failure to see that a lighthouse stayed in working order. The Court held in *Indian Towing* that while the initial decision to build and maintain the lighthouse was a discretionary judgment, the failure to maintain the lighthouse in good condition subjected the government to suit under the FTCA because the failure to maintain did not involve any permissible exercise of policy judgment. *Id.* at 69, 76 S.Ct. at 126–127.

The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a [lighthouse] and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order....

*Id.*

In *Berkovitz,* the Supreme Court expanded on the concept announced in *Indian*

*Towing.* It separated the making of discretionary policy from its nondiscretionary implementation. The Court described a two-step process for determining whether the discretionary function exception applies in specific fact situations. First, a court must examine the nature of the challenged conduct and consider whether the government employee had any discretion to act, i.e., whether there was an element of choice.

> Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion. . . .

*Id.* 108 S.Ct. at 1958–59. If the employee has no choice as to appropriate conduct, there is no immunity.

If an action does involve some discretion, however, the inquiry does not end. The court must then determine whether exercise of that discretion is the kind that the discretionary function exception was designed to shield, that is whether it is one grounded in "social, economic, and political policy." *Berkovitz,* 108 S.Ct. at 1959.

The plaintiff in *Berkovitz* had first alleged that DBS issued a license to the vaccine manufacturer without receiving test data required by regulations and without examining the product and determining that it complied with existing regulatory standards. The plaintiff alleged that the failure to receive required data before issuing a license was negligent conduct. The Court held that there was no immunity; the plaintiff's complaint did not challenge a discretionary function.

> Rather, the claim charges a failure on the part of the agency to perform its clear duty under federal law. When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply.

*Id.* 108 S.Ct. at 1963. *Accord Baker v. United States,* 817 F.2d 560 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988) (holding discretionary function exception did not bar suit based on facts similar to those in *Berkovitz* ).

Plaintiffs also alleged negligence in connection with the implementation of a specific policy of testing all vaccine lots for compliance with safety standards and prohibiting the release of any lots that failed to comply. Plaintiffs alleged that DBS allowed release of the offending lot even though it allegedly did not comply with the safety standards. The Court held that such allegations did not describe conduct within the discretionary function exception. There was no room for policy judgment; non-complying lots should not have been released. *Berkovitz,* 108 S.Ct. at 1964.

Plaintiffs finally claimed that, if DBS had actually made a determination that the offending polio vaccine complied with licensing standards, its determination was incorrect and therefore actionable under the FTCA. The Supreme Court could not fully evaluate this claim on the record before it. It said that if the challenged conduct involved a policy judgment for which there were no objective standards to guide the choice, the discretionary function exception would bar the claim. However, if, as petitioners contended, the decision was a safety determination involving application of objective scientific standards, the determination was not a "policy judgment," and hence fully actionable.

> [T]he question turns on whether the manner and method of determining compliance with the safety standards at issue involves agency judgment of the kind protected by the discretionary function exception. Petitioners contend that the determination involves the application of objective scientific standards, . . . whereas the Government asserts that the determination incorporates considerable "policy judgment" . . . . In making these assertions, the parties have framed the issue appropriately; application of the discretionary function exception to the claim that the determination of compli-

ance was incorrect hinges on whether the agency officials making that determination permissibly exercise policy choice. *Id.* 108 S.Ct. at 1963. Because the record did not indicate how DBS determined vaccine compliance with licensing standards, the Court remanded to the district court to decide whether the DBS exercised policy judgment in connection with its determination that the faulty vaccine complied with safety regulations. *Id.*

Thus, under *Berkovitz* the key inquiry is not whether the government employee has a choice, but whether that choice is a policy judgment. Three recent Ninth Circuit cases, although decided before *Berkovitz*, now appear to illustrate the appropriate analysis after *Berkovitz*. *Huber v. United States*, 838 F.2d 398 (9th Cir.1988); *ARA Leisure Services v. United States*, 831 F.2d 193 (9th Cir.1987); *Seyler v. United States*, 832 F.2d 120 (9th Cir.1987). In *ARA Leisure Services*, a tour bus went off the road in Denali National Park. The owner of the tour bus, after being sued by those on the tour bus for injuries, sued the United States for contribution, claiming that the road had not been maintained in a safe condition. *ARA Leisure Services*, 831 F.2d at 194. The district court granted summary judgment for the government, holding that the claim was barred by the discretionary function exception because maintenance was a matter of choice. The district court's analysis ended there.

We reversed, holding that where the "choice" is a failure or refusal to follow safety standards, there is no immunity. We said that "[w]here the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the exception falls away and the United States will be held responsible for the negligence of its employees." *Id.* at 195 (quoting *Aslakson v. United States*, 790 F.2d 688, 693 (8th Cir.1986)). We observed that the National Parks Service decision to design and construct the road was a policy decision. However, because the failure to maintain the road in a safe condition was not a decision grounded in social, economic or

political policy, the plaintiffs' case based on that failure was not barred by the discretionary function exception. *Id.* at 196.

Similarly, in *Seyler* we held that failure to maintain a road in a safe condition was not a decision protected by the discretionary function exception. In that case, plaintiff was injured while riding on a motorcycle which failed to negotiate a turn on a road maintained by the Bureau of Indian Affairs. The plaintiff alleged that the BIA negligently failed to erect speed limit signs on the road. *Seyler*, 832 F.2d at 122. Reversing the district court's holding that the discretionary function exception barred the plaintiff's claim, we said:

> [w]e can find nothing in the record to suggest that the BIA's failure to provide signs resulted from a decision "grounded in social, economic, or political policy." (Citation omitted). Moreover, we doubt that any decision not to provide adequate signs would be "of the nature and quality that Congress intended to shield from tort liability." (Citation omitted).

*Id.* at 123, (quoting *Varig*, 467 U.S. at 813–14, 104 S.Ct. at 2764).

In *Huber* we held that the discretionary function exception did not bar suit against the Coast Guard for alleged negligence in connection with its attempt to assist a ship in distress. We recognized that the Coast Guard, because of its limited resources, could not help all ships in distress, and had to make a policy judgment to use its resources to help plaintiff's ship. This decision was a protected discretionary decision. *Huber*, 838 F.2d at 401. However, its subsequent conduct in rendering assistance was not immune from scrutiny and had to comply with the applicable standard of care.

> Once that choice had been made, thereby creating reliance by [the ship's] crew, the Coast Guard became liable for its failure, if any, to conform to the applicable standard of care.... The Coast Guard's failure to assist after specifically promising assistance was not an act of the nature and quality intended to be unreviewable

under the discretionary function exception....

*Id.*

■ The appropriate analysis laid down by our own Ninth Circuit cases and consistent with *Berkovitz* can be summarized for purposes of this case as follows. Conduct of a government agency or employee is not immune from scrutiny as a "discretionary function" simply because it involves an element of choice. It must be a choice rooted in social, economic or political policy. If it is a choice to be exercised within established objective safety standards, and the plaintiffs claim negligence in failure to follow such standards, the discretionary function exception does not apply.

We must endeavor to apply these standards to this case. It is apparent in this case that the district court, without benefit of *Berkovitz*, agreed with the government that so long as there was any element of choice in the original decision to use dynamite as opposed to other means, the original decision to blast and all activities related to the conduct of the blasting were immune from scrutiny as discretionary functions. This was error.

■ We turn first to the appellant's claim that, apart from the original decision to blast rather than drill, the amount of dynamite used was excessive. Appellant contended in the district court, in response to the government's motion to dismiss, that the "seismic testing conducted by the U.S. government did not meet industry standards" for the prevention of damage to structures such as appellant's well. The appellant offered the affidavit of a geological engineer stating that the size of the charge in relation to the distance from appellant's wells violated established industry standards:

> The thirty-pound charge allegedly used to set off the blast closest to [appellant's well] was not reasonable and did not meet acceptable seismic industry standards for the prevention of damage given the size of the charge, the distance of the shot point from the well and the unconsolidated alluvial materials involved.... The Seiscom Delta Chart ...

indicates that the minimum safe distance from structures for dynamite charges from eleven to fifty pounds is 1,320 feet.... [T]he distance between [the charge at issue] and [appellant's well] was between 800 and 900 feet. Therefore, [the charge] was not within a safe distance of [the well].

If appellant is able to prove its allegation, the government should be liable. The choice of how much dynamite to use at the particular location was not one "grounded in social, economic, or political policy." *Varig*, 467 U.S. at 814, 104 S.Ct. at 2765. It was one governed by objective standards which the government must use due care in following. *See Berkovitz*, 108 S.Ct. at 1958–59. Having undertaken the blasting project, the government "became liable for its failure, if any, to conform to the applicable standard of care." *Huber*, 838 F.2d at 401. The discretionary function exception does not shield the government from liability based upon negligent use of a dangerous amount of dynamite in its blasting.

■ However, on this record it is more difficult to discern whether the government's decision to use blasting in the first place was governed by objective standards or was rooted in a policy judgment. While it is hard for this court to imagine a lack of industry or government standards bearing on when use of dynamite is appropriate, the record is silent on the subject. Clearly a decision to use the cheapest and easiest method in contravention of safety standards could not be a protected discretionary function, any more than the decision to leave a lighthouse in disrepair was protected in *Indian Towing Co.*, 350 U.S. at 69, 76 S.Ct. at 126–127. *See also ARA Leisure Services*, 831 F.2d at 195 (fact that Park Services was required to work within a budget does not make failure to maintain road a protected discretionary decision). The record here does not definitively establish whether such was the nature of this decision. We therefore remand the question whether the blasting decision was one based on policy to the district court in light of *Berkovitz* and our opinion in this case.

The judgment of the district court is REVERSED. The court should first reconsider in light of this opinion whether the original decision to use dynamite is within the discretionary function exception. The district court then should consider the merits of the appellant's claim that the manner in which the blasting was conducted was negligent. REVERSED and REMANDED.