**INDUSTRIAL RISK INSURERS an Association of Capital Stock Companies Consisting Of The Aetna Casualty & Surety Co., et al.**

v.

**NEW ORLEANS PUBLIC SERVICE, INC., et al.**

Civ. A. No. 81–2635 "I".

United States District Court, E.D. Louisiana.

March 8, 1990.

P. Albert Bienvenu, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, La., for plaintiffs.

Richard A. Goins, Adams & Reese, New Orleans, La., for defendants.

MENTZ, District Judge.

### ORDER AND REASONS

This case arose from a fire on July 8, 1980, which destroyed the chinaware manufacturing plant owned by American Standard, Inc. Plaintiffs, American Standard and its insurers, brought suit against New Orleans Public Service, the Sewerage and Water Board and its insurer, Lexington Insurance Company, the City of New Orleans, and the New Orleans Fire Department. Jurisdiction is based on diversity of citizenship. The City of New Orleans (City) and the New Orleans Fire Department (NOFD) filed a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and/or alternatively, for judgment on the pleadings under Fed.R.Civ.P. 12(c). The issue before the Court is whether the City and the NOFD should be dismissed from this suit as immune from liability pursuant to the provisions of La.Rev.Stat. Ann. § 9:2798.1 (West Supp.1990) and La. Rev.Stat.Ann. § 9:2793.1 (West Supp.1990), and/or for lack of an individual duty to the plaintiff pursuant to the Public Duty Doctrine. For the reasons that follow, the motion must be denied. As matters outside the pleadings were submitted to and considered by the court, and the parties were given a reasonable opportunity to submit all relevant material, the court will treat the motion as a motion for summary judgment under Fed.R.Civ.P. 56.

Louisiana statutory law provides that public entities, such as the City and the NOFD, are not liable for their employees' discretionary or policy-making acts. La. R.S. 9:2798.1 states:

A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also

to assist in the implementation of Article II of the Constitution of Louisiana.

The City and the NOFD contend that all of the plaintiffs' allegations of negligence against them, which may be summarized as negligent fire fighting technique and negligent administration of the Fire Department, involve discretionary or policy-making acts under La.R.S. 9:2798.1. The City and the NOFD contend that the combination of various statutes and regulations governing the conduct and administration of the Fire Department gave them complete discretionary authority.

■ As La.R.S. 9:2798.1 was enacted by legislation effective September 6, 1985, over five years after the date of the American Standard plant fire, the statute does not apply to the facts in this case unless it is retroactive. In Louisiana, a statute may be applied retroactively in three instances: 1) where the law suppresses or lessens penalties; 2) where the law is interpretive of existing legislation; and 3) where the laws are expressly or impliedly intended by the legislature to be applied retroactively. *Ardoin v. Hartford Accident and Indemnity Co.*, 360 So.2d 1331, 1338 (La.1978).

■ This Court agrees with the holding in *Winstead v. Ed's Live Catfish and Seafood, Inc.*, 554 So.2d 1237 (La.App. 1st Cir. 1989), that "La.R.S. 9:2798.1 is interpretive of La.Civ.Code art. 2315, et seq. and a codification of the public duty doctrine, and that the legislature intended that it be applied retroactively." *Id.* at 1242 (citing *Sunlake Apartment Residents v. Tonti Development Corporation*, 522 So.2d 1298, 1304 (La.App. 5th Cir.1988) and *Brown v. Red River Parish School Board*, 488 So.2d 1132, 1134 (La.App. 2d Cir.1986) (which hold that based on paragraph (D) of La.R.S. 9:2798.1, the statute is interpretive in nature and therefore, to be applied retroactively)). *See also* Senate Committee on Judiciary, Section C, Minutes of Meeting of

June 18, 1985; House Committee on Appropriations, Minutes of Meeting of May 14, 1985; and the Original, Engrossed, Reengrossed, and Enrolled versions of House Bill No. 67, all of which indicate that La. R.S. 9:2798.1 incorporates and refines the public duty doctrine.

■ Contrary to plaintiffs' contention, La.R.S. 9:2798.1 does not violate Louisiana's constitutional denial of sovereign immunity. Article XII, Section 10(A) of the Louisiana Constitution of 1974 provides:

> Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.

The Louisiana Supreme Court has held that a statute which limits in any respect recoverable tort damages against the state does not violate this constitutional provision. *See Sibley v. Board of Supervisors of Louisiana State University*, 462 So.2d 149, 154 (La.1985). Article XII, Section 10(A) of the Louisiana Constitution contains a limited waiver of sovereign immunity and was intended by the Legislature to eliminate the requirement that plaintiffs must obtain legislative approval in order to bring a lawsuit against the state. While Article XII, Section 10(A) denies the state immunity from suit and immunity from liability in contract or tort, it does not prohibit the Legislature from limiting recoverable compensatory damages. *Id.* at 154.

In deciding whether a defendant's conduct involves a discretionary or policy-making act under La.R.S. 9:2798.1, the Court may refer to § 2680(a) of the Federal Tort Claims Act (FTCA).[1] The FTCA provides the federal government with a "discretionary function" exception to liability which is essentially the same as Louisiana's discretionary or policy-making act exception to state government liability in La.R.S. 9:2798.1. *Fowler v. Roberts*, 556 So.2d 1,

---

**1.** 28 U.S.C. § 2680(a) provides that the FTCA's general waiver of immunity for tort suits against the United States found in 28 U.S.C. § 1346(b) shall not apply to—

> Any claim based upon an act or omission of an employee of the Government ... based

upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

15 (La.1990).[2] The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

Courts have found it a difficult task to define the boundaries of the discretionary function exception. *See Williamson v. United States Dep't. of Agric.*, 815 F.2d 368, 374–75 (5th Cir.1987). Some courts have improperly extended the discretionary function exception beyond policy decisions to negligent implementation of a policy decision. *Arizona Maintenance Co. v. United States*, 864 F.2d 1497, 1500–01 (9th Cir. 1989) (citing as examples *Begay v. United States*, 768 F.2d 1059, 1062 n. 2 (9th Cir. 1985), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988); *Chamberlin v. Isen*, 779 F.2d 522, 524 (9th Cir.1985); *Cunningham v. United States*, 786 F.2d 1445, 1447 (9th Cir.1986); and *Proctor v. United States*, 781 F.2d 752, 753 (9th Cir.), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2918, 91 L.Ed.2d 546 (1986)).

In contrast, the Fifth Circuit has maintained that the discretionary function exception does not protect all decisions made by government employees.

'Every act of a rational being involves some choices,' and the discretionary function exception must be read carefully or it will totally insulate the government from tort liability. *Collins v. United States*, 783 F.2d 1225, 1233–34 (5th Cir. 1986) (Brown, J., concurring). Courts have generally drawn a line between decisions at a planning level, or decisions that exercise policy judgment, and decisions at a operational level, or decisions that are merely incident to carrying out a

government policy. *See Dalehite v. United States*, 346 U.S. 15, 35–36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953). 'Discretionary decision-making ... is accompanied by nondiscretionary acts of execution, whether termed operational, ministerial, or clerical.' *Payton v. United States*, 679 F.2d 475, 480 (5th Cir. Unit B 1982) (en banc). Once the government makes a discretionary decision, the discretionary function exception does not apply to subsequent decisions made in the carrying out of that policy, 'even though discretionary decisions are constantly made as to how those acts are carried out.' *Wysinger v. United States*, 784 F.2d 1252, 1253 (5th Cir.1986). The decisions of this circuit have been extraordinarily careful to avoid any interpretation of the discretionary function exception that would embrace any governmental act merely because some decision-making power was exercised by the official whose act was questioned. *See, e.g., Denham v. United States*, 834 F.2d 518, 520 (5th Cir.1987) (noting that the 'government's approach would subsume practically any decision within the discretionary function exception and thereby vitiate the FTCA'); *Smith v. United States*, 375 F.2d 243, 246 (5th Cir.) (noting that a broader reading of the exception would destroy the 'corpuscular vitality' of the Federal Tort Claims Act), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967).

*Trevino v. General Dynamics Corporation*, 865 F.2d 1474, 1484 (5th Cir.1989).

Recently, in *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the Supreme Court clarified the scope of the discretionary function exception consistent with the Fifth Circuit's position. The Court explained that it is the nature of the challenged conduct, rather than the status of the actor

---

**2.** Applicability of the discretionary function exception under the FTCA will divest a federal court of subject matter jurisdiction, whereas La.R.S. 9:2798.1 is not jurisdictional. In addition, liability may be imposed under La.R.S. 9:2798.1 even where a discretionary act is involved, if the acts or omissions are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists, or the acts or omissions constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

that must be examined. *Id.* 108 S.Ct. at 1958 (quoting *Varig Airlines,* 104 S.Ct. at 2764). The Court set forth a two-part test for determining the nature of the challenged conduct. First, the court must consider whether the conduct at issue was a matter of choice or discretion for the employee. If the conduct does involve an element of discretion, then the Court must determine whether that choice was based on the permissible exercise of policy judgment. *Id.* 108 S.Ct. at 1959. A policy judgment is one that requires weighing of competing social, economic, and political policy considerations, as opposed to the application of objective standards. *Id.* 108 S.Ct. at 1963; *Arizona Maintenance,* 864 F.2d at 1502–04. The Supreme Court emphasized that the discretionary function exception applies only if the challenged action involved a policy choice. Thus, a decision implementing a discretionary decision is protected by the discretionary function exception only if it also involves a policy judgment. *Arizona Maintenance,* 864 F.2d at 1501.

For example, in *Varig Airlines,* the Supreme Court held that the discretionary function exception protected not only the FAA's policy decision to spot check airline compliance with safety regulations, but also the acts of the FAA employees who implemented the spot-check program because the program specifically empowered the employees "to make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources." *Varig Airlines,* 104 S.Ct. at 2767–68.

■ In the case at bar, the City and the NOFD cited several provisions addressing the powers of the Fire Department, which, they contend, grant "all encompassing" discretion.[3] This position is without merit. There is no one statute or regulation, or any combination of statutes or regulations that can be construed as granting total discretion in firefighting and administration of the Fire Department. Indeed, plaintiffs have submitted various regulations mandating certain conduct which the City and the NOFD allegedly failed to perform.[4]

Moreover, even if it could be said that the statutory and regulatory scheme granted the City and the NOFD broad discretion, that does not necessarily mean that the administrative and operational execution of that discretion is a discretionary or policy-making act within the meaning of La.R.S. 9:2798.1. A decision must involve a policy judgment to fall within the protection of La.R.S. 9:2798.1.

One of the plaintiffs' many allegations is that the NOFD negligently disconnected electrical service to American Standard's plant, thereby shutting down the sprinkler system. Section 24–18 of the Municipal Code for the City of New Orleans gives the Superintendent of the Fire Department discretion to cut electrical power on any wires in the vicinity of a fire. However, the fact that the Superintendent may choose whether to cut electrical power does not necessarily make his decision a policy judgment such that it may be deemed a discretionary or policy-making act under La.R.S. 9:2798.-

3. The cited provisions are: La.Rev.Stat.Ann. §§ 33:4771–33:4773 (West 1988); La.Rev.Stat. Ann. § 33:1971 (West 1988); Municipal Code §§ 24–18 and 19, and § 38–18; and Home Rule Charter, Article 4, § 602.

Of these provisions, the following address matters that are not the subject of any of plaintiffs' allegations: Municipal Code § 38–18 (giving discretion to fire department officers to direct traffic while entering or leaving the fire station or in the vicinity of a fire); the Home Rule Charter, Article 4, § 602 (granting the Superintendent of the Fire Department the powers of a police officer while attending a fire alarm or a fire, as well as the discretion to cause any structure to be demolished); and La.R.S. 33:1971 (establishing that the ranking fire protection officer will be in charge of fire safety personnel at the scene of a fire, the jurisdictional boundaries of that authority, whether that authority may restrict the authority of law enforcement officers (it may not), and the penalty for fire fighting interference).

4. Plaintiffs have alleged that defendants violated the mandatory provisions contained in Sections 4–601 and 602 of the City Charter, Sections 1:01, 1:03, 4:02, 4:07, 4:08, 5:01, 5:06, 5:07, 5:12, 6:09, 6:10, 9:04 of the NOFD Rules and Regulations, and La.Rev.Stat.Ann. § 40:1563 (West 1977).

1. The City and the NOFD have not submitted any evidence that their allegedly negligent actions were decisions based upon the exercise of policy judgment, as opposed to merely operational decisions based on objective standards.

The City and the NOFD also cited La. R.S. 33:4771–33:4773. Those sections provide that the inspection of any building in connection with implementation of a fire prevention code is deemed a discretionary act under La.R.S. 9:2798.1. While it would appear that there can be no liability on plaintiffs' allegation that the NOFD negligently inspected American Standard's premises, sections 33:4771–33:4773 are not applicable to the case at bar because they were enacted in 1987, seven years after the fire, and do not have retroactive application. *See Sunlake Apartment*, 522 So.2d at 1304.

To the extent that plaintiffs' allegations are based on failure to perform a specific statutory or regulatory directive, there is no challenge to a discretionary or policy-making act. "Conduct cannot be discretionary unless it involves an element of judgment or choice.... Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 108 S.Ct. at 1958.

If the plaintiffs allege that the defendants negligently performed a specific statutory or regulatory directive, then the question becomes whether determination of the manner and method of implementing of that directive involved the exercise of policy judgment. *Berkovitz*, 108 S.Ct. at 1963. Again, the court notes that the record is silent as to whether the defendants' allegedly negligent conduct was based on policy judgment.

Not all of the challenged conduct of the defendants in this case is governed by statute or regulation. That fact does not automatically render conduct a discretionary or policy-making act under La.R.S. 9:2798.1. To be entitled to immunity, the decision must involve the weighing of economic, political and social policy considerations. *See Gaubert v. United States*, 885 F.2d 1284, 1289 (5th Cir.1989).

■ The City and the NOFD also contend that in addition to La.R.S. 9:2798.1, immunity is also provided under La.R.S. 9:2793.1, recently enacted in 1989.[5] La. R.S. 9:2793.1 immunizes public entities, like the City and the NOFD, from liability for property damage at the site of a fire, without the requirement that the employee's actions be discretionary or policy-making acts. What must be shown is that the "officer or employee was acting within the course and scope of his office or employment ... while taking reasonable remedial action which is necessary to abate a public emergency." La.R.S. 9:2793.1(A). Like La.R.S. 9:2798.1, the immunity conferred under La.R.S. 9:2793.1 does not cover willful or wanton misconduct, or gross negligence. However, unlike La.R.S. 9:2798.1, La.R.S. 9:2793.1 is not retroactive. It is not an interpretive statute because it grants affirmative protection which did not exist before its passage. The legislative

---

5. La.R.S. 9:2793.1 states:

A. No person shall have a cause of action against a public entity or the officers and employees thereof for damage to property at the site of a crime, accident, or fire, including without limitation the destruction or deterioration of property, caused while the officer or employee was acting within the course and scope of his office or employment and while taking reasonable remedial action which is necessary to abate a public emergency, unless such damage was caused by willful or wanton misconduct or gross negligence.

B. (1) As used in this Section, "public entity" means the state, or a political subdivision thereof which maintains a department responsible for fire protection, and its fire department, or a law enforcement agency, office, or department responsible for the prevention and detection of crime and the enforcement of the criminal laws of this state, and its law enforcement agency, office, or department.

B. (2) For purposes of this Section, the term "public emergency" includes any emergency in which there is a potential threat to life or property requiring immediate or remedial action, in order to insure the safety and health of persons and property, including an emergency created by apparent violation of the criminal laws of this state or an emergency created by fire.

history indicates that its enactment was prompted by the need to relieve firefighters and police officers responding to the scene of an emergency from the threat of suit. *See* Civil Law and Procedure Committee, Minutes of Meeting of May 15, 1989; Senate Committee on Judiciary A, Minutes of Meeting of June 13, 1989. There is no indication that the statute was expressly or implicitly intended to be applied retroactively.

■ Finally, the City and the NOFD contend that plaintiffs' allegations must be dismissed under the Public Duty Doctrine because they did not owe an individual duty to the plaintiffs. Under that doctrine, the duty of a public official is owed to the general public and not to the individual, unless it can be shown that some special duty was owed to the individual. In determining that La.R.S. 9:2798.1 is retroactive, this court found above that the Public Duty Doctrine was subsumed and supplanted by La.R.S. 9:2798.1. Accordingly, defendants' liability to the plaintiffs for non-discretionary acts will be judged under the traditional duty-risk analysis. *See Fowler v. Roberts*, 556 So.2d 1 (La.1989).

■ Considering the statutory and regulatory scheme governing the conduct and administration of the Fire Department, the Court finds that the City and the NOFD undertook to provide fire protection to the citizens of New Orleans, and therefore, they owed plaintiffs a legal duty to perform that function according to reasonable standards of conduct. *See Id.; See also Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 127, 100 L.Ed. 48 (1955) ("[O]nce the [Coast Guard] exercised its discretion to operate a [lighthouse] and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order."); *McCloud v. Parish of Jefferson*, 383 So.2d 477, 479 (La.App. 4th Cir.1980) (Lemmon, J. concurring) ("Once a governmental body undertakes to provide drainage or to make general improvements in an existing system, it has a duty to perform this function according to reasonable standards and in a man-

ner which does not cause damage to particular citizens.")

Accordingly,

IT IS ORDERED that the motion of defendants, the City of New Orleans and the New Orleans Fire Department, to dismiss for failure to state a claim or alternatively, for judgment on the pleadings is DENIED.