**Douglas M. ROURKE, Plaintiff,**

v.

**UNITED STATES of America; Michael C.E. Quirk, Charles Raab, and Richard Fritz, Special Agents, Federal Bureau of Investigation, Allentown, Pa.; Lopatcong Township, NJ; Neil Corley; and Norman Viebrock, Defendants.**

**Civ. A. No. 87–2869.**

United States District Court,
E.D. Pennsylvania.

Oct. 27, 1988.

Memorandum on Denial of Reconsideration
Nov. 17, 1989.

**102**

Nicholas Noel, III, Teel, Stettz, Shimer, DiGiacomo, Nazareth, Pa., for plaintiff.

John N. Joseph, Serena H. Dobson, Asst. U.S. Attys., Philadelphia, Pa., for defendants.

## MEMORANDUM

TROUTMAN, Senior District Judge.

Plaintiff Douglas Rourke was arrested by the defendant FBI agents for bank robbery. The charges were subsequently dismissed by the Magistrate upon the motion of the United States. Plaintiff now seeks compensation for having been arrested and detained when, he alleges, the agents should reasonably have known that he was not the perpetrator of the crime. Specifically, plaintiff alleges that local law enforcement officials gave the federal agents information indicating that the plaintiff was older and otherwise much different in appearance from the suspect described by witnesses to the crime. Moreover, allegedly in order to "solve" a high visibility case quickly, plaintiff asserts that the officers showed the witnesses fifteen to twenty year-old photographs of the plaintiff, thereby eliciting identifications of him by the witnesses which were then used in an affidavit of probable cause to obtain a warrant for his arrest from the Magistrate.

The sum and substance of the plaintiff's claims are that the FBI agents conducted a "haphazard" investigation calculated to achieve a quick arrest in disregard of the plaintiff's rights. The result of that course of conduct, he alleges, were various federal and state constitutional violations as well as the commission of a number of torts cognizable under the laws of Pennsylvania. Originally, plaintiff had also asserted claims against two townships and several police officials thereof, but all of the state defendants have now been dismissed, leaving only three FBI agents and the United States as defendants. (*See,* Order of June 16, 1988, Doc. # 27 and Stipulation of Dismissal of July 22, 1988, Doc. # 30).

In these motions to dismiss the complaint, the remaining individual defendants contend that they are absolutely immune from personal liability for the state law torts asserted in Counts I thru V and enjoy qualified immunity for the Constitutional claims asserted in Count VI. The United States contends that it is immune from all Constitutional torts alleged and that the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), applies, precluding suit against the government for the actions of the FBI agents. Finally, all defendants contend that their conduct is not actionable under the Civil Rights Acts, 42 U.S.C. §§ 1983, 1985(3) and 1986.

■ Considering first the individual defendants' claims of absolute immunity, we note that the United States Supreme Court has recently settled a dispute among the Courts of Appeals regarding the scope of immunity available to federal officials for state law torts. In *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), the Court held that federal officials enjoy absolute immunity only when acting within the scope of their employment and when performing a discretionary function. Applying that two-pronged standard to this case, it is obvious that the FBI agents, in investigating a bank robbery and arresting a suspect, were acting within the scope of their employment. The remaining question, then, is whether they were also performing a discretionary function.

■ The same issue, *i.e.,* whether the officers were performing a discretionary function, must also be decided in connection with the plaintiff's claims against the United States under the Federal Tort Claims Act (FTCA). Clearly, the same conduct which this Court concludes is discretionary for purposes of establishing immunity from state law tort claims will likewise be discretionary for purposes of determin-

ing whether the United States has waived immunity for the conduct of the FBI agents pursuant to the FTCA.

To guide our consideration of the discretionary function issue, we turn to *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986). There, in discussing law enforcement functions of federal agents, the court noted that,

> [The] decision to file complaints ... is an *a fortiori* example of a discretionary function ... As one Court notes,
>
>> Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and accordingly, courts have uniformly found them to be immune under the discretionary function exception.
>
> *Gray v. Bell*, 712 F.2d 490, 513 (D.C.Cir. 1983) (Remainder of citation omitted).

According to *Pooler*, claims based upon an erroneous decision to prosecute a suspect later shown to be innocent of the crime for which he was arrested are not actionable since the officers' decision to arrest and prosecute is a discretionary function of law enforcement officers. As noted previously, this determination applies for purposes of establishing absolute immunity from state tort actions as well as for purposes of the FTCA, the context in which *Pooler* was decided.

With respect to the FTCA, however, there is another issue to consider. The intentional tort proviso, 28 U.S.C. § 2680(h), appears to waive sovereign immunity for assault, battery, false imprisonment, false arrest, abuse of process and malicious prosecution when those torts are alleged to have been committed by investigative or law enforcement officials of the United States. Nevertheless, the *Pooler* court held that a plaintiff may not recover for the acts or omissions of such an officer without first, "Clear[ing] the hurdle of the discretionary function exception". 787 F.2d at 872. In short, according to *Pooler*, liability cannot attach to an arrest simply because it was erroneous. Even under the intentional tort proviso, the arresting officers are performing a discretionary function when they determine whom to arrest. Consequently, they are subject to liability only when they commit one of the intentional torts enumerated in the statute in the course of making an arrest, executing a search or seizing evidence.

 Applying these legal principles to the facts alleged here, it is clear that the individual defendants are immune from liability for the state law torts alleged because they were acting within the scope of their employment and were performing a discretionary function. With respect to the same torts alleged against the United States under the Federal Tort Claims Act, it is clear that, to the extent that Rourke seeks compensation for having been erroneously arrested and charged due to a flawed investigation, the discretionary function exception precludes the claims against the government in that the manner of conducting an investigation and the decision to seek an arrest warrant are the kind of "quintessentially" discretionary activities for which sovereign immunity has not been waived. To the extent, however, that plaintiff alleges that he was assaulted in the course of being arrested, the government is not protected from liability. Thus, all of the state tort claims against the individual officers will be dismissed and all tort claims brought pursuant to the Federal Tort Claims Act will likewise be dismissed except for the allegations of assault in the course of making the arrest.

Turning to the Constitutional claims, we note that those based upon the United States Constitution are asserted pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986, only. Under the present circumstances, these claims are not viable.

 In the first instance, state action is required to maintain a lawsuit under 42 U.S.C. § 1983. The statute specifically requires that the actions alleged to have violated the plaintiff's rights must have been taken under color of state law. Liability will not attach for action taken under color of federal law. *Behre v. Thomas*, 665 F.Supp. 89 (D.N.H.1987), *Drayton v. Veterans Administration*, 654 F.Supp. 558 (S.D.

N.Y.1987), *Krohn v. U.S.*, 578 F.Supp. 1441 (D.Mass.1983). Moreover, while it is true that conspiracy with a state actor will subject a private party or a federal agent to liability under § 1983, the state actors must have played a significant role in the alleged deprivation of rights suffered by the plaintiff. *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979). Finally, claims for violations of civil rights in this circuit are subject to heightened standards of factual specificity in pleading. *Colburn v. Upper Darby Township*, 838 F.2d 663 (3d Cir. 1988). To meet this requirement, the complaint must contain sufficient facts to enable the Court to determine that the complaint is not frivolous and to enable the defendant to frame an answer. *Frazier v. SEPTA*, 785 F.2d 65 (3d Cir.1986).

Here, none of the foregoing requirements have been met. First, it is clear that the defendants were acting under color of federal, not state law, in that the arrest was effected with a warrant issued for a violation of the United States criminal code by a federal magistrate who ultimately disposed of the case. Thus, no matter what the state actors' participation in the incident may have been, state action is absent from any violation of Constitutional rights which may have occurred because of the investigation, the filing of criminal charges or the arrest, all of which were accomplished pursuant to federal law.

Moreover, even if the state action requirement could be fulfilled simply by the participation of state and federal officers in a common plan, the allegations against Lopatcong Township officials, as well as the allegations of conspiracy between them and the federal officers, are general and conclusory. It is impossible to determine how much, if at all, the state officials participated in the injuries allegedly suffered by the plaintiff. Plaintiff makes no factually specific allegations against Lopatcong Township and/or its Chief of Police asserting only that those defendants failed to follow acceptable investigative procedures, conspired with the FBI agents and attempted to harrass and intimidate Rourke into confessing to the crime. Consequently, neither the Court nor the defendants can

determine from the Complaint whether there was substantial participation by the state actors in the alleged Constitutional violations or whether there was any sort of joint or cooperative action between the federal defendants and the state actors, much less whether any such joint activities could be termed a conspiracy. The bare allegations of conspiracy without any mention of the facts which support them fall short of acceptable civil rights pleading standards.

■ Ordinarily, the Court would grant plaintiff the opportunity to amend the complaint to correct its deficiencies. In this instance, however, such an amendment would be unavailing in light of our prior conclusion that the actions taken by all law enforcement officials involved in this case were taken pursuant to federal law. Without color of state law, the presence of state officials cannot subject federal officials to liability under § 1983 even if sufficient facts were alleged from which it could be determined that the participation of the state officials in the alleged violations was substantial and that there was a conspiracy between them and the federal agents.

Finally, now that all of the state defendants have been dismissed from the case, it is far from clear that the FBI agents could be held liable for civil rights violations pursuant to § 1983 on the theory of having conspired with the state officials. (*But see, Darr v. Wolfe*, 767 F.2d 79 (3d Cir. 1985). Conspiracy with a state official will subject an individual defendant to liability for § 1983 claims even though the state official is immune from liability.)

■ Plaintiff notes, correctly, that liability under § 1985(3) does not require state action. It merely requires conspiracy to violate civil rights. Plaintiff also realizes that the protections of § 1985(3) extend only to victims of invidious class-based discrimination and seeks to place himself within the categories of persons protected thereunder. His efforts, however, are doomed to failure for two reasons: First, claims under § 1985(3) are subject to the same specificity in pleading requirements applicable to § 1983 actions, which we have

already concluded are not met by the conclusory allegations before the Court. *Hauptmann v. Wilentz*, 570 F.Supp. 351 (D.N.J.1983); second, § 1985(3) may be invoked only as a remedy for discrimination which is based upon the plaintiff's immutable characteristics, such as race or gender. *Id.* Consequently, this plaintiff cannot sue under § 1985(3) because he belongs to a class of former arrestees and is thereby subject to discrimination.

 In the absence of viable claims under §§ 1983 and/or 1985(3), there can be no claim for failure to prevent violations of those provisions under § 1986. *Silo v. City of Philadelphia*, 593 F.Supp. 870 (E.D.Pa.1984).

In addition to the aforementioned reasons for dismissal of the claims under the civil rights acts cited by the FBI agents, the United States contends that it has not waived sovereign immunity for constitutional torts of any kind and that it is not a "person" for purposes of the civil rights laws in any event. Given our disposition of plaintiff's claims under the civil rights acts on the bases of lack of state action with respect to § 1983, the unavailability of § 1985(3) as a remedy for this plaintiff and the pleading deficiencies applicable to the allegations of conspiracy between state and federal officers upon which plaintiff's Constitutional claims are based, it is unnecessary to address these additional arguments made by the United States.

Likewise, having thus disposed of the only claims alleged under the United States Constitution, it is unnecessary to discuss the availability of qualified immunity for the federal officers in connection with their arrest and detention of the plaintiff.

To summarize, we have concluded that the state tort claims alleged against the individual FBI agents must be dismissed in that the agents are absolutely immune from such claims under the circumstances here alleged. This is so because the agents were acting within the scope of their employment and were performing a discretionary function in investigating, arresting and prosecuting the plaintiff, notwithstanding the fact that the charges against him were later dismissed at the request of the United States. The United States itself is immune from liability for all but one of the same claims alleged under the Federal Tort Claims Act because of the discretionary function exception thereto. The intentional tort proviso of the FTCA, however, preserves for the plaintiff his claim for assault insofar as that claim is based upon conduct which occurred during the course of the arrest, but not insofar as it is based upon his having been taken into custody, committed to prison and later searched. We have also concluded that plaintiff has failed to state a claim against the individual defendants, and hence, against the United States, under the civil rights acts, 42 U.S.C. §§ 1983, 1985(3) and 1986 and those claims will likewise be dismissed. An appropriate order follows.

## ORDER

AND NOW, this 27th day of October, 1988, upon consideration of defendants' Motions to Dismiss the Second Amended Complaint (Doc. # 18 and # 33) and plaintiff's response thereto, IT IS ORDERED that the motion is GRANTED in part and DENIED in part. All remaining allegations of the Second Amended Complaint are DISMISSED, except for those made in COUNT XI, insofar as they are based upon allegations made in COUNT I, specifically ¶ 50 A, in accordance with the accompanying Memorandum.

It is FURTHER ORDERED that the remaining defendant,* United States of America, Federal Bureau of Investigation, file an answer to plaintiff's remaining claim within twenty (20) days of the entry of this order.

## MEMORANDUM ON DENIAL OF RECONSIDERATION

Plaintiff Douglas Rourke has requested reconsideration of this Court's order dis-

---

* Pursuant to the Court's Order entered on June 16, 1988 (Doc. # 27) and a Stipulation of Dismissal entered on July 22, 1988 (Doc. # 30), all allegations were dismissed against Palmer Township, Nicholas DiVietro, Lopatcong Township, Neil Corley and Norman Viebrock, originally defendants in this action.

missing all but one count of his second Amended Complaint. Plaintiff argues that the Court misapplied the case of *Pooler v. United States*, 787 F.2d 868 (3d Cir.1986), *cert. denied*, 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986), and failed to consider relevant facts which were or could have been elicited through the discovery process.

Specifically, plaintiff contends that, in applying *Pooler*, the Court failed to consider the facts that the defendant FBI agents provided erroneous, misleading and incomplete information to the U.S. Magistrate who issued a warrant for plaintiff's arrest. Plaintiff further argues that the investigative techniques which led to the defendant agents' decision to seek a warrant for his arrest were slipshod at the least.

Plaintiff's arguments misapprehend the purpose and effect of the Court's order and the concept of immunity from suit based upon the discretionary function exception to the Federal Tort Claims Act. Such immunity does not depend upon the facts of an incident, but upon the nature of the defendants' conduct, *i.e.*, whether they were performing a discretionary function. Likewise, such immunity applies even where the facts, whether alleged or proved, demonstrate a clear abuse of discretion on the part of defendants. Finally, such immunity is not relief from liability, which depends upon a determination of the facts. Rather, it is relief from litigation entirely, and is applied as a result of a legal conclusion by the Court regardless of the facts of the incident. In other words, once it has been determined that the defendants were engaged in a function of their employment to which immunity attaches, the manner in which they discharged the function does not affect their immunity from suit.

After careful consideration of plaintiff's arguments, we conclude that he is not really challenging the Court's determination that an investigation and arrest resulting therefrom represent the exercise of a discretionary function. Instead, we conclude that plaintiff is actually contending that there are some circumstances, including those here present, which constitute such an egregious abuse of discretion that discretionary function immunity should be abrogated. This Court, however, is not free to disregard the statutory scheme of the Federal Tort Claims Act as it has been interpreted in *Pooler*. Thus, we are required to disregard the circumstances from which plaintiff's claim arose. That course may appear to protect incompetence and injustice here, based upon the allegations of the complaint, which we accept as true for the purposes of a motion to dismiss. It is, nevertheless, the wisest course to follow across the broad spectrum of potential complaints, considering the need for vigorous and fearless investigations on the part of federal law enforcement officers. Otherwise, every mistaken prosecution, however innocent, and, indeed, every investigation which leads to a "good" arrest but does not result in a conviction would become a potential lawsuit. Such a threat could not help but have a deleterious effect upon law enforcement.

It is important to note that the Court does not condone, much less approve the kind of investigation alleged to have been conducted in this case. The issue, however, transcends the particular situation here presented. Thus, we conclude, once again, that our original decision was correct and should remain in force. Consequently, plaintiff's motion for reconsideration will be denied.